UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

Mark Raymond Zaporski,                                    Case No. 06-51617
                                                         Chapter 7
                          Debtor.                        Hon. Phillip J. Shefferly
——————————————————————/

**AMENDED[1] OPINION GRANTING TRUSTEE'S MOTION TO DISMISS
CHAPTER 7 CASE**

## I. Introduction

On August 24, 2006, Mark Zaporski filed this chapter 7 case. The U.S. Trustee moved to dismiss this case for abuse. The UST's motion is brought under § 707(b)(2) and (3) of the Bankruptcy Code. On December 15, 2006, the Court held a hearing on the UST's motion. The parties agreed that there were material facts in dispute and, therefore, the Court conducted an evidentiary hearing on January 24, 2007. At the conclusion of the hearing, the Court took the matter under advisement. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This opinion constitutes the Court's findings of fact and conclusions of law. For the reasons set forth in this opinion, the Court denies the UST's motion under § 707(b)(2) and grants the UST's motion under § 707(b)(3).

## II. Facts

The evidence adduced at the hearing addressed Zaporski's assets, liabilities, income and expenses. Zaporski was the only witness at the hearing. Zaporski testified that he is single and resides in Walled Lake, Michigan. He has been divorced for over 20 years and does not have any

---

[1] This amended opinion only corrects a typographical error in a citation and does not change the substance of the original opinion.

children or other dependents.  Zaporski has been employed by DTE Energy for over 26-1/2 years.

According to his schedules, Zaporski had the following assets at the time of filing:

| | |
|---|---|
| Condominium | $155,000 |
| 401(k) | 128,229 |
| "Cash and carry pension" | 102,500 |
| Vehicles and miscellaneous personal property | 18,807 |
| Total | $404,536 |

In his testimony, Zaporski described the pension as a "traditional pension plan" at DTE based upon years of service.  He estimated that, if he were to "go out today," it would pay him $670 per month.  Zaporski also explained that, at age 62, he will be entitled to receive $1,491 per month of social security benefits.  Zaporski's age is not part of the record, nor was he asked when he might retire.  The UST introduced evidence that the balance in Zaporski's 401(k) plan as of September 30, 2006 was $143,251.39.  (Ex. C.)  Zaporski testified that he had access to the 401(k) plan for loans, but he did not have such access to the DTE pension.

Zaporski's personal property includes two vehicles.  He testified that he owns a 1993 Ford F150 with 196,000 miles on it and a 1997 Infinity with 145,000 miles on it.  Schedule B identifies the Infinity as a "Q4S" model.  Zaporski listed the value of the F150 at $1,000 and the Infinity at $5,000. The balance of the personal property consists of approximately $6,000 in clothing, furniture and exercise equipment, and $6,600 for a firearms collection.

According to his schedules, Zaporski had the following liabilities at the time of filing:

| | |
|---|---|
| First mortgage on condominium (Chase) | $56,791 |
| Second mortgage on condominium (DTE Credit Union) | 95,500 |
| Statutory lien for condominium fees | 1,500 |
| Federal and state income tax for 2005 | 2,125 |
| Unsecured non-priority claims | 103,240 |
| Total | $259,156 |

Zaporski testified about his 2005 income taxes. He had obtained an extension to file his 2005 tax returns, which had been prepared post-petition. Zaporski stated that he was not due a refund, but instead owed $2,155. He explained that this was because he had withdrawn funds from IRA accounts, and was assessed taxes on those distributions.

Most of Zaporski's unsecured debts are for credit cards. Zaporski testified that he filed bankruptcy because over the last few years he had incurred substantial debt, in part due to personal problems, by spending excessively to "have a good time wherever and whenever" on dinners, concerts, partying and entertainment with his friends. Zaporski testified that he is now in recovery from his personal difficulties and that, prior to filing bankruptcy, he had tried to pay his creditors by liquidating substantial sums, close to $80,000, in various personal accounts, including IRAs. Although he tried to work out payment arrangements, he was unsuccessful and therefore filed this Chapter 7 case.

The only additional information provided by Zaporski at trial concerning his liabilities pertained to a debt of $59,000 listed as disputed on his schedules and owing to Karen Walls. Zaporski testified that this debt was the result of a suit filed against him after a traffic accident in which he was involved. He testified that his insurance company is defending the suit, that he disputes the liability asserted, and that it was not the reason that he filed this bankruptcy case.

If the Court were to construct a balance sheet of Zaporski's scheduled assets and liabilities, it would show that Zaporski is solvent, with $145,380 more in assets than liabilities. Using the value of $143,251 for the 401(k) account from the trial evidence (Ex. C), the excess of assets over liabilities increases to $160,402.

Zaporski has a degree in engineering and presently works in marketing at DTE as a

consultant. Schedule I shows monthly gross income of $6,101.33. Zaporski testified that his annualized salary is approximately $73,500. He described his employment at DTE as secure. Zaporski also testified that he receives cost of living increases annually. He "typically" receives a 2-3% increase on his anniversary date.

In addition to payroll deductions for taxes, social security and insurance, Zaporski's schedule I includes a deduction of $672.76. A detailed statement is attached to schedule I that breaks down this deduction. The two largest components consist of a monthly contribution of $346.67 to Zaporski's 401(k) plan and a monthly repayment of $320.67 for loans that he owes to his 401(k) plan. Zaporski testified that he voluntarily participates in the 401(k) program through DTE, and DTE matches his contributions, up to 12%. Zaporski had been contributing the maximum of 20% at one time. However, he had reduced his contribution to the current 6% in order to increase his net pay because his debts were becoming "too much."

Zaporski testified that he has taken two loans from the 401(k) plan. The balance outstanding with respect to these two loans as of September 30, 2006 was $7,596.93 (Ex. C). Zaporski testified that the loan balance was being reduced monthly and that, as of January 16, 2007, the total balance owing with respect to these two loans was $6,510. That balance is comprised of $1,359 on the first loan, which Zaporski testified will be paid in full by April, 2008, and $5,161 on the second loan, which Zaporski testified will be paid in full by February, 2009. Zaporski's pay statement (Ex. D) reflects the bi-weekly payroll deductions taken out of each of his paychecks for repayment of these two loans. Zaporski testified that if he defaults on the loans, he will pay a tax penalty on the total amount originally borrowed instead of only on the balance left owing. The loans would be considered as distributions from the plan and taxed accordingly. In addition, he would be barred from

-4-

contributing to the plan for six months to a year. However, Zaporski explained that he would suffer no adverse employment consequences if he defaulted on the loan repayments.

Zaporski's schedule J shows monthly expenses of $3,458.00. Zaporski did not testify about the payments on his condominium. However, he indicated on schedule J that he was behind in his payments on his first mortgage to Chase. On line 19, Zaporski indicated that he was paying $576 per month to cure the arrearage, which was due to be paid off, as of the petition date, in seven months.

The UST's questioning focused on transportation expenses. Zaporski listed $750 on line 8 on schedule J for "Transportation (not including car payments)" and $141 on line 11.e. for auto insurance. Zaporski testified that he maintains the minimum insurance coverage allowed for both vehicles. According to Zaporski's testimony, line 8 represents expenses for fuel and repairs. He explained that he has high repair expenses due to the age and mileage of the vehicles. With frequent repairs making one vehicle unavailable, Zaporski uses the other as a backup. Zaporski testified that his round trip commute for work is 75-76 miles. He also stated that he travels extensively for business but is reimbursed his mileage for that travel by DTE. He described it as the "standard government mileage" rate, and believed it was approximately 46 cents per mile. Schedule I does not reflect any mileage reimbursement as additional income, nor is there any indication in schedule J or Zaporski's testimony that he reduced his transportation expenses by the amount of mileage reimbursement that he receives. When asked whether schedule J is an accurate reflection of his current expenses, Zaporski pointed only to the $49 cable TV expense as having increased. Zaporski did not indicate what the current amount is.

A "bottom line" review of Zaporski's scheduled income and expenses shows $3,524.07 of

06-51617-pjs   Doc 33   Filed 04/17/07   Entered 04/17/07 11:35:56   Page 5 of 25

income after payroll deductions on schedule I, and $3,458 of expenses on schedule J, for net monthly income of $66.07.

## III.  Discussion

Dismissal of a chapter 7 case is governed by § 707.  Section 707(b)(1) provides that:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief *would be an abuse of the provisions of this chapter.*

11 U.S.C. § 707(b)(1) (emphasis added).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") provides two methods to determine whether a debtor is "abusing" chapter 7 under § 707(b)(2).  First, § 707(b)(2)(A)(i) draws a bright line test by quantifying what is considered an abuse.  There is a presumption that a debtor is abusing chapter 7 if the debtor has a certain level of disposable income, after deducting specific expenses, sufficient to produce a bench mark dividend to general unsecured creditors.  This calculation is accomplished through what is referred to as the "means test."  To ascertain whether the statutory presumption arises, individual chapter 7 debtors are required to complete and file Official Form B22A prescribed by the Judicial Conference of the United States.  Once it arises, a presumption of abuse may only be rebutted under § 707(b)(2)(B) upon a showing of "special circumstances."  Second, even if the presumption does not arise or is rebutted, § 707(b)(3) permits the Court to dismiss a case if the petition was filed in bad faith or if the totality of the circumstances of the debtor's financial situation demonstrates abuse.  In the case before the Court, UST relies on both sections.  The Court will address them sequentially.

-6-

## Presumption of Abuse Under § 707(b)(2)(A)

Line 58 of Zaporski's amended form B22A shows "monthly disposable income" under § 707(b)(2) of $24.08. Therefore, on its face, it does not establish a presumption of abuse. However, the UST argues that Zaporski did not properly complete this form and that, if it were properly completed, the presumption of abuse would arise. If the Court determines that Zaporski did not properly complete form B22A, and that proper completion of it results in the creation of the statutory presumption of abuse under § 707(b)(2)(A), then the UST's motion must be granted unless Zaporski rebuts the presumption by demonstrating "special circumstances" as permitted under § 707(b)(2)(B). In this case, Zaporski did not introduce any evidence to demonstrate special circumstances. Therefore, if the UST is correct and the Court finds that Zaporski did not properly complete form B22A, and that its proper completion establishes a presumption of abuse, the statute requires dismissal.

The UST argues that Zaporski failed to properly complete his amended means test form in two respects, each of which relates to reductions for his transportation expenses. The UST's first objection pertains to lines 23 and 24 of the means test. Line 23 is entitled "Local Standards: transportation ownership/lease expense; Vehicle 1." The form directs debtors to "[c]heck the number of vehicles for which you claim an ownership/lease expense. (You may not claim an ownership/lease expense for more than two vehicles.)" Zaporski checked the box for "2 or more." Line 23 then asks for "the amount of the IRS Transportation Standards, Ownership Costs, First Car" less the amount of the "Average Monthly Payment for any debts secured by Vehicle 1." Zaporski entered $471, the full amount of the IRS ownership cost for one vehicle, with no reduction for an average monthly payment because he has no such payment. Line 24 is similar to line 23. It asks for "Local Standards:

transportation ownership/lease expense; Vehicle 2," with the direction to enter "the amount of the IRS Transportation Standards, Ownership Costs, Second Car." Zaporski entered $332, the full amount of the IRS standard for ownership of a second vehicle, again with no reduction for an average monthly payment because he has no such payment. The UST asserts that Zaporski is not entitled to either of these reductions because it is undisputed that Zaporski owns his two vehicles free and clear and does not have any monthly payments for them. Zaporski argues that he is entitled to both of these reductions without regard to whether he has any obligation to make payments on these two vehicles.

The UST's second objection to Zaporski's amended form B22A pertains to line 22. Line 22 is entitled "Local Standards: transportation; vehicle operation/public transportation expense," and contains the following explanation:

> You are entitled to an expense allowance in this category regardless of whether you pay the expenses of operating a vehicle and regardless of whether you use public transportation.
>
> Check the number of vehicles for which you pay the operating expenses or for which the operating expenses are included as a contribution to your household expenses . . .
>
> Enter the amount from IRS Transportation Standards, Operating Costs & Public Transportation Costs for the applicable number of vehicles in the applicable Metropolitan Statistical Area or Census Region.

Zaporski checked the box for "2 or more" and took a reduction for $473, which is the amount indicated in the IRS Transportation Standards for the operation expenses for two vehicles in the Detroit metropolitan area. The UST asserts that Zaporski is entitled to only one such reduction. Zaporski asserts that he is entitled to take a reduction for operation expenses for two vehicles on line 22 because he owns two vehicles.

-8-

The outcome of these two means test form disputes is significant because if the UST is correct and Zaporski is not entitled to these reductions, then the statutory presumption of abuse would arise under a corrected form B22A, and the UST's motion to dismiss must be granted.

Despite legislative history and commentary suggesting that the means test was enacted in BAPCPA for the purpose of creating a uniform test and eliminating judicial discretion in considering an individual debtor's income and expenses for purposes of determining their entitlement to relief under chapter 7, a year and a half of BAPCPA has spawned extensive litigation over how to apply this supposed bright line test. The starting point to determine whether Zaporski is entitled to the reductions he has taken on lines 22, 23 and 24 of his amended form B22A is the statutory language that authorizes reductions from a debtor's current monthly income.

Section 707(b)(2)(A) of the Bankruptcy Code instructs that the debtor's current monthly income is to be "reduced by the amounts determined under clauses (ii), (iii), and (iv)." In this case, the reductions at issue are found in clause (ii), specifically § 707(b)(2)(A)(ii)(I), which provides that:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . . Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

Transportation expenses are included in the IRS Local Standards. As reflected in form B22A, they are divided into ownership expenses and operation expenses. The IRS Local Standards provide for "ownership costs" of $471 for a "first car" and $332 for a "second car," regardless of where an individual claiming such expenses resides. The IRS Local Standards provide for "operating costs" of $390 for "one car" and $473 for "two cars" for an individual who resides in the Detroit

-9-

metropolitan area, as Zaporski does.

Simply put, the issues here are whether § 707(b)(2)(A)(ii)(I) permits Zaporski to take reductions for (i) ownership expenses for two vehicles even though he has no actual payments on either of them, and (ii) operation expenses for both of these vehicles rather than for just one of them. The first of these two issues has attracted much attention and is the subject of many divergent opinions. See In re Grunert, 353 B.R. 591, 592-93 (Bankr. E.D. Wis. 2006) (collecting cases on both sides of the issue). One article describes this issue as "[p]erhaps the most highly litigated issue with regard to a debtor's means test deductions" and notes that "[t]he volume of published and unpublished opinions that are in direct contradiction to each other is staggering, and a resolution does not seem to be imminent." David W. Allard & Katherine R. Catanese, The Means Test, Part II: Deductions, More Ambiguity in the New Era of Means Testing, Am. Bankr. Inst. J., Mar. 2007, at 14, 62-63.

 The court in In re Grunert framed this issue as follows:

> The issue boils down to the meaning of the phrase "applicable . . . amounts specified under the Local Standards." One argument is that "applicable" means applicable to a particular debtor who owns a vehicle subject to a lien. On the other side are those who argue that "applicable" means the region where the debtor lives or the number of vehicles owned by the debtor (the standards allow deductions for up to two). The bankruptcy courts that have analyzed this issue are split.

353 B.R. at 592 (citations omitted). After reviewing both lines of cases, the Grunert court held as follows:

> Treating the Local Standard deductions for vehicle ownership as fixed allowances rather than caps on actual expenses is supported by the plain meaning of the statute ("applicable" versus "actual"), the legislative history, and carefully reasoned caselaw. This Court therefore respectfully disagrees with the line of cases that has determined that the debtor must have a car payment in order to claim the Local Standards.

-10-

In ruling for the debtor, the <u>Grunert</u> court quoted extensively from <u>In re Farrar-Johnson</u>, 353 B.R. 224 (Bankr. N.D. Ill. 2006). <u>Farrar-Johnson</u> did not involve a transportation expense, but instead an analogous issue regarding a means test reduction for a housing expense. The debtors took a Local Standards reduction for a mortgage/rent expense, even though the debtors lived in military housing and did not actually have a mortgage/rent expense. 353 B.R. at 226. The trustee objected. In holding for the debtors, the court examined the statutory context for the terms "applicable" and "actual" in § 707(b)(2)(A)(ii)(I).

> Section 707(b)(2)(A)(ii)(I) permits a debtor to claim "the applicable monthly expense amount" under the Local Standards. Read in isolation, "applicable" is ambiguous, meaning simply: "That can be applied; appropriate." *American Heritage Dictionary* 89 (3rd ed. 1996); *see also Webster's Third New Int'l Dictionary* 105 (1981) (defining "applicable" as "capable of being applied: having relevance"). An expense could be "appropriate" for a debtor to claim because he actually incurs that expense. It could also be "appropriate" to claim because he lives in a certain state and county and has a household of a certain size, putting him in the right box on the Local Standards chart.
>
> Statutory terms, though, are never read in isolation; they are read in the context in which they appear. Section 707(b)(2)(A)(ii)(I) defines monthly expenses not only as a debtor's "*applicable* monthly expense amounts" under the National and Local Standards" but also as the debtor's "*actual* monthly expenses" for the categories the IRS specifies as "Other Necessary Expenses." Congress drew a distinction in the statute between "applicable" expenses on the one hand and "actual" expenses on the other. "Other Necessary Expenses" must be the debtor's "actual" expenses. Expenses under the "Local Standards," in contrast, need only be those "applicable" to the debtor-because of where he lives and how large his household is. It makes no difference whether he "actually" has them.

353 B.R. at 230-31 (quoting 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added in original)) (other citations omitted).

<u>Farrar-Johnson</u> supports Zaporski's position in this case regarding the reductions he has taken on lines 23 and 24 of his form B22A for ownership expenses for his two vehicles. The analysis in

Farrar-Johnson, although dealing with a reduction for mortgage/rent expense rather than ownership expense for a vehicle, is well-reasoned and equally applicable to a reduction for vehicle ownership. After having reviewed the opinions going both ways on this issue, the Court finds most persuasive Grunert, Farrar-Johnson and the line of cases that conclude that the IRS Local Standards are fixed *allowances*, and not caps on a debtor's *actual* expenses, and therefore permit a debtor to take a reduction for an ownership expense of a vehicle even if the debtor owns the vehicle free and clear and has no actual payments for the vehicle. See also In re McIvor, No. 06-42566, 2006 WL 3949172 (Bankr. E.D. Mich. Nov. 15, 2006).

If Congress intended to give an individual debtor a reduction under National Standards or Local Standards only for that particular debtor's "actual" expense within a given category, Congress could have easily said so, just as it did later in the same statutory provision that allows a reduction for a debtor's "actual monthly expense" in the categories that the IRS specifies as Other Necessary Expenses. It didn't. Section 707(b)(2)(A)(ii)(I) also includes the sentence that "[n]otwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts." Although actual payments for debts may permit means test reductions under other subsections of § 707(b)(2)(A), this sentence makes clear that a debtor's actual expenses are irrelevant in determining the reductions for National and Local Standards under § 707(b)(2)(A)(ii)(I). Zaporski has the better of the statutory construction arguments in this Court's view. The Court concludes that Zaporski's applicable Local Standards ownership cost reductions are based on the number of vehicles Zaporski owns, not the number for which Zaporski makes payments.

In reaching its conclusion, the Court is not unaware that some courts have reached a contrary result after examining the IRS Financial Analysis Handbook in the Internal Revenue Manual ("IRM")

-12-

and IRS collection standards for direction.  See, e.g., In re McGuire, 342 B.R. 608, 612-13 (Bankr.

W.D. Mo. 2006) (reviewing the IRS Financial Analysis Handbook and the IRM); In re Hardacre, 388

B.R. 718, 726-27 (Bankr. N.D. Tex. 2006) (finding the IRS Collection Financial Standards and the

IRM "instructive").  For example, the Financial Analysis Handbook gives the following guidance in

an overview of allowable expenses:

> Housing - Standards are established for each county within a state.  When deciding
> if a deviation is appropriate, consider the cost of moving to a new residence . . . .
>
> Transportation – . . . If a taxpayer has a car payment, the allowable ownership cost
> added to the allowable operating cost equals the allowable transportation expense.
> If a taxpayer has no car payment only the operating cost portion of the transportation
> standard is used to figure the allowable transportation expense. . . . If the taxpayer
> does not own a car a standard public transportation expense is allowed.
>
> Other – Other expenses may be allowed if they meet the necessary expense test.  The
> amount allowed must be reasonable considering the taxpayer's individual facts and
> circumstances.

IRM, Financial Analysis Handbook § 5.15.1.7.4-5 (available at http://www.irs.gov/irm/part

5/ch15s01.html).

However, in his widely cited article discussing the means test, Judge Wedoff persuasively

explains why the IRM may not be the best source in analyzing BAPCPA:

> [T]here is a question of whether an ownership expense may be claimed by a debtor
> who owns a car free of any lien.  The language quoted from the IRM states that if the
> debtor makes no car payments, the ownership expense amount may not be claimed.
> Indeed, this result follows necessarily from the IRM's treatment of the Local Standards
> as caps on actual expenditures: if a taxpayer has no car payments, the taxpayer
> obviously cannot claim a Local Standard amount intended to cap actual car payment
> expenses.  However, since the means test treats the Local Standards not as caps but
> as fixed allowances, it is more reasonable to permit a debtor to claim the Local
> Standards ownership expense based on the number of vehicles the debtor owns or
> leases, rather than on the number for which the debtor makes payments. This approach
> reflects the reality that a car for which the debtor no longer makes payments may soon
> need to be replaced (so that the debtor will actually have ownership expenses), and it

-13-

avoids arbitrary distinctions between debtors who have only a few car payments left at the time of their bankruptcy filing and those who finished making their car payments just before the filing.

Eugene R. Wedoff, Means Testing in the New § 707(b), 79 Am. Bankr. L.J. 231, 257-58 (2005).

The danger of following IRS collection standards in analyzing whether a presumption of abuse arises was also highlighted by Judge Lundin in his authoritative treatise. Not only are such considerations absent from the Bankruptcy Code, but that line of inquiry leads to further factual questions and away from an easy to apply formula.

If we once impose other conditions or standards on the entitlement to ownership costs under the Local Standards for Transportation, where do we begin and end that inquiry? Does the kind of car make a difference? The value of the car? What if the debtor could get rid of the car and use public transportation? These are conditions that might be imposed by a revenue officer in a negotiation with a taxpayer with respect to an offer in compromise. These considerations are completely foreign to § 707(b)(2)(A)(ii)(I). Considerations of the availability of public transportation or of the necessity of the car to the debtor's means of earning a living or to the production of income appear nowhere in the statute.

5 Keith M. Lundin, Chapter 13 Bankruptcy § 476.1 at 476-10 (3d ed. 2000 & Supp. 2006).

It is also worth mentioning that there are policy considerations that support the Court's holding on this issue. The court in In re Fowler, 349 B.R. 414 (Bankr. D. Del. 2006) made two important observations about policy. The first pertains to the context for the consideration of this issue: a means test reduction for a vehicle ownership expense is only relevant for purposes of determining the existence or non-existence of a presumption of abuse. "Presumptions are typically created to avoid litigation." 349 B.R. at 420 (citation omitted). Therefore, if the means test is intended to create a statutory presumption to determine abuse, it follows that "Congress intended the Court to use a chart of standard expenses for all debtors which could be easily and uniformly applied . . . ." Id. at 420-21. For the purpose of determining the existence of the presumption, a court need "simply take[ ] the

-14-

expense amount from the applicable column based on the debtor's income, family size, number of cars and/or locale," without engaging in any fact specific inquiry into a particular debtor's actual payment obligations.  Id. at 421.

Second, the Fowler court points out that permitting a debtor "a deduction under the means test does not insulate her case from dismissal.  Instead, it simply means that there is not a presumption of abuse."  Id.  The UST still has the option of arguing for dismissal based on the facts in a particular debtor's case.  Id.  This Court agrees.  Just because there is no statutory presumption of abuse does not somehow create a safe harbor for a debtor.  The UST can still request dismissal, as she has done in this case, under § 707(b)(3), either for bad faith or based on a totality of circumstances analysis that can properly take into consideration a debtor's actual income and expenses, including the existence or non-existence of car payments, irrespective of the reductions that a debtor may be entitled to take under the means test form B22A.

After reviewing the applicable statutory provisions, those cases construing them, and various secondary authorities discussing them, the Court holds that Zaporski properly took reductions for the two vehicles that he owns on lines 23 and 24 on his amended form B22A.

The second means test issue raised by the UST pertains to Zaporski's reduction on line 22 for a Local Standards operation expense for both of his vehicles.  In support of this objection, the UST relies primarily upon the IRM and the IRS collection financial standards.  Under those standards, expenses are limited to those that are "necessary."  "Transportation expenses are considered necessary when they are used by taxpayers and their families to provide for their health and welfare and/or the production of income."  IRM, Financial Analysis Handbook § 5.8.5.5.2.  The UST urges the Court to use this definition and find that Zaporski is not entitled to take an operation expense for two

-15-

vehicles because two vehicles are not necessary to provide for his health and welfare and/or production of income.

For all of the reasons explained by the Court in rejecting the UST's objection to Zaporski's means test form reductions on lines 23 and 24, the Court reaches a similar conclusion with respect to the UST's objections to line 22 of Zaporski's means test form. BAPCPA does not adopt the IRS collection financial standards nor the Internal Revenue Manual. Instead, it simply imports the "applicable monthly expense amounts specified under the National Standards and Local Standards" and it is only in the IRS categories described as Other Necessary Expenses that BAPCPA's means test focuses at all on a debtor's "actual monthly expenses." In calculating vehicle operating cost reductions under the means test,

> [t]here is no requirement that the debtor have *actual* transportation expenses in order for the debtor to claim operating expenses under the Local Standards for Transportation. It is not appropriate to dissect the debtor's actual expenses for things like car insurance, registration, parking or licensing to determine whether the amount specified for operating costs in the Local Standards issued by the IRS is appropriate. The debtor gets the allowance without regard to actual operating costs.

5 Keith M. Lundin, Chapter 13 Bankruptcy § 476.1 at 476-11. The UST has cited no authority that would bar Zaporski, as the undisputed owner of two vehicles, from taking an operation expense for both of them. The form invites it and the statute allows it. The Court concludes that Zaporski's applicable Local Standards operating costs are based on the number of vehicles he owns and the region in which he lives, not his actual operating expenses.

In sum, the Court rejects the UST's arguments and finds that Zaporski has properly completed his amended form B22A means test form. Accordingly, to the extent that the UST's motion to dismiss is brought under § 707(b)(2)(A), the Court denies the motion.

## Totality of Circumstances Under § 707(b)(3)

The UST asserts that even if the Court finds that Zaporski properly completed his amended form B22A, such that the statutory presumption of § 707(b)(2)(A) does not arise, nevertheless, Zaporski's chapter 7 case is still an abuse and should be dismissed under § 707(b)(1) once the Court considers those facts that it is directed to consider under § 707(b)(3). That section of the Bankruptcy Code provides as follows:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider –
>
> (A) whether the debtor filed the petition in bad faith; or
> (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).

The UST does not allege that Zaporski filed his petition in bad faith, but does request dismissal because of the totality of circumstances under § 707(b)(3)(B). Although the "totality of circumstances" language in § 707(b)(3)(B) is new under BAPCPA, the concept certainly is not. As explained by one author:

> When judges assess the totality of a debtor's financial circumstances under § 707(b)(3) for purposes of determining whether the debtor is abusing chapter 7, they will not be exploring a wilderness. . . . "[T]otality of the circumstances" itself is a judicially created construct for determining "substantial abuse" under pre-BAPCPA § 707(b), and the case law applying that concept lays out the general scope of the abuse to be determined.

Eugene R. Wedoff, Judicial Discretion to Find Abuse Under § 707(b)(3), Am. Bankr. Inst. J., April 2006, at 1, 52.

Prior to BAPCPA, an extensive body of case law was developed within the Sixth Circuit to

-17-

determine whether a debtor's case should be dismissed under § 707(b) with its pre-BAPCPA "substantial abuse" test. In In re Krohn, 886 F.2d 123 (6th Cir. 1989), the court stated the test as follows:

> In determining whether to apply § 707(b) to an individual debtor, then, a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or instead is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. Substantial abuse can be predicated upon either lack of honesty or want of need.

Id. at 126 (citation omitted). The Krohn court goes on to list some of the factors to be used in weighing a debtor's particular circumstances. Id. at 126-27. A critical factor

> in deciding whether a debtor is "needy" is his ability to repay his debts out of future earnings. That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

Id. (citations omitted).

In this case, the UST does not allege that Zaporski is not an honest debtor. Further, the Court had the opportunity to observe Zaporski during his testimony and finds that he testified in a credible way. There is no evidence that he has been anything less than candid in dealing with his difficulties. Rather, the UST questions whether Zaporski is in need of relief under chapter 7.

Zaporski asserts that because there is no statutory presumption of abuse in this case under § 707(b)(2)(A), his ability to pay his creditors cannot be taken into consideration by the Court in its

-18-

analysis of the totality of circumstances under § 707(b)(3)(B). In other words, Zaporski argues that the means test is conclusive regarding his ability to pay. According to this argument, the pre-BAPCPA case law that identifies a debtor's ability to pay as one of the factors to be considered in the totality of circumstances test, is no longer applicable. This argument was advanced in an article by Marianne B. Culhane and Michaela M. White, <u>Catching Can-Pay Debtors: Is the Means Test the Only Way?</u>, 13 Am. Bankr. Inst. L. Rev. 665 (2005). The authors of that article contend that the means test is now the exclusive way to determine a debtor's ability to pay his or her creditors. With the adoption of the means test and its criteria for a statutory presumption under § 707(b)(2)(A), this article posits that in considering a motion to dismiss for abuse based upon totality of circumstances under § 707(b)(3)(B), the Court cannot consider whether a debtor has an ability to pay his or her creditors in a chapter 13 case. <u>Id.</u> at 677-82.

The Court rejects that construction of § 707(b)(2) and (3). Section 707(b)(2)(A) creates a statutory presumption of abuse in certain circumstances but offers no safe harbor to those debtors with respect to whom this statutory presumption does not arise. Section 707(b)(3) permits a court to dismiss for abuse even absent the statutory presumption in either of two instances: § 707(b)(3)(A) instructs the court to consider whether the debtor filed the bankruptcy petition "in bad faith." That subsection of § 707(b)(3) enables the court to deal with debtors who have engaged in misconduct or have filed a petition for improper purposes. But misconduct and improper purposes, or bad faith, are not necessary elements for a court to dismiss under new § 707(b)(3)(B). That subsection instructs the court to consider the totality of circumstances "of the debtor's financial situation." This plain language is broad enough to encompass, indeed require, consideration of those facts that are probative of a debtor's ability to repay his or her creditors. Such facts are in this Court's view a circumstance

of that debtor's "financial situation" even where the debtor's petition is not filed in bad faith and even where the statutory presumption of abuse has not arisen under § 707(b)(2)(A) with respect to such debtor. The Court is not persuaded that § 707(b)(3)(B) precludes the Court from considering a debtor's ability to pay his or her creditors as one of the totality of circumstances under § 707(b)(3)(B) in determining whether that debtor's case would be an abuse of chapter 7. Although there is no controlling decision on this point of law, the Court agrees with the extensive discussion of this issue and the conclusion reached by the court in In re Pak, 343 B.R. 239, 241-44 (Bankr. N.D. Cal. 2006); see also In re Mestemaker, ___ B.R. ___, No. 05-76976, 2007 WL 79306 at *3-5 (Bankr. N.D. Ohio Jan. 10, 2007); In re Simmons, 357 B.R. 480, 487-89 (Bankr. N.D. Ohio 2006).

Accordingly, in reviewing the totality of Zaporski's circumstances in this case, the Court will properly consider, as one of those circumstances, his ability to repay his creditors even though the Court has concluded that the statutory presumption of abuse based upon the means test does not arise in this case under § 707(b)(2)(A).

The Court will next examine the totality of circumstances in this case. Zaporski enjoys a stable income. He has been employed by DTE for over 26 years. There is no evidence to suggest that his employment will not continue. Further, his income at DTE is substantial. The median income for a family of one in Michigan is $41,877. Zaporski's salary is nearly double that median income.

Zaporski's schedules I and J (Exs. A and B) show monthly net income of $66.07. However, that amount is after a reduction for Zaporski's contribution of $346.67 per month to his 401(k) plan and for his repayment of $320.67 per month on his two 401(k) plan loans. It is true that, if Zaporski were to convert to chapter 13, he would still be permitted to repay the loans and that such repayment would not constitute disposable income available to fund a chapter 13 plan. Under 11 U.S.C.

-20-

§ 1322(f), a chapter 13 "plan may not materially alter the terms of a [401(k) loan] and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325." This is also reflected in form B22C, the means test form used in chapter 13. Line 55 of form B22C deducts from income "the monthly average of (a) all contributions or wage deductions made to qualified retirement plans, as specified in § 541(b)(7) and (b) all repayments of loans from retirement plans, as specified in § 362(b)(19)." But Zaporski testified that the first loan only has a balance owing of $1,359 and will be paid in full by April, 2008. The second loan, with a balance of $5,161, will be paid in full by February, 2009. Although Zaporski's testimony was not clear on the precise allocation of the $320.67 per month payment between these two loans, what is clear is that as of February, 2009, Zaporski will have an extra $320.67 per month available to pay unsecured creditors.

Because Zaporski is an above median income debtor, his applicable commitment period in the event of a conversion to chapter 13 would be five years. See 11 U.S.C. § 1325(b)(4)(A)(ii)(I); In re Davis, 348 B.R. 440, 453-54 (Bankr. E.D. Mich. 2006). Assuming this case were converted to chapter 13 in April, 2007, then Zaporski's chapter 13 plan would run until approximately April, 2012. According to Zaporski's testimony, after February, 2009, both of his loans from his 401(k) plan will be paid in full. That means that for at least the last 38 months of his plan (i.e., February, 2009 through April, 2012), Zaporski would no longer have the obligation of paying $320.67 per month because of his loans from his 401(k) plan. That means that this sum would then be available to pay unsecured creditors in a chapter 13 plan. Over that 38 month period, if this sum were dedicated to a chapter 13 plan, it would aggregate $12,185.46. Further, Zaporski explained that one of the 401(k) loans will be paid off in April, 2008. Even if it were only the smaller loan that is paid off in April, 2008, that would begin freeing up additional funds at that time to contribute to a chapter 13 plan. Based on

-21-

Zaporski's pay statement from DTE (Ex. D), if the smaller loan payment is the one that expires in April, 2008, that would still free up at least $95.29 per month in April, 2008 to contribute toward a chapter 13 plan. In the ten months from April, 2008 to February, 2009, when both loans will be paid off, that produces another $950.29 (i.e., 10 months at $95.29) available for unsecured creditors. Finally, Zaporski's schedules I and J (Ex. A and B) presently show monthly net income of $66.07. Over 60 months, if that sum was contributed to a chapter 13 plan, it would produce another $3,964.20. To recap, Zaporski has the following sums available to him, without making any changes to his schedules I and J, to contribute to a chapter 13 plan:

| | |
|---|---|
| 60 months at $66.07 | $3,964.20 |
| 10 months at $95.29 | 950.29 |
| 38 months at $320.67 | 12,185.46 |
| Total | $17,099.95 |

The 2005 income tax debt of $2,125 would have to be paid ahead of general unsecured creditors. Therefore, accepting all of Zaporski's testimony as true, in a chapter 13 case Zaporski would have $14,974.95 (i.e., $17,099.95 less $2,125) available to pay his unsecured creditors. That would result in a substantial dividend. If Zaporski prevails in disputing the liability to Karen Walls for the traffic accident, then he has only $44,240.00 of unsecured liabilities. That would produce a dividend of 34%. Even if the indebtedness to Karen Walls is not successfully disputed, and she has an allowed claim for the full $59,000, there would still be enough funds for a dividend of 15%. Importantly, this dividend could still be made available for unsecured creditors even while Zaporski continues throughout the life of a 60 month plan to make voluntary contributions to his own 401(k) plan on a monthly basis in the amount of $346.67, for a total of $20,800.20 (i.e., 60 x $346.67). In other words, during the same 60 months that he stays in this chapter 13 plan and contributes over

-22-

$20,800 to his own 401(k) plan, Zaporski could still afford to pay $14,974.95 to his unsecured creditors.

Zaporski argues that certain of his expenses will increase, or were not properly taken into account by the UST in calculating a potential dividend through a chapter 13 plan. Given the age of his two vehicles and their high mileage, Zaporski argues that he will likely need to purchase a replacement vehicle during the time he would be in chapter 13. A new vehicle would require full coverage insurance, instead of the minimal coverage Zaporski now has. However, Zaporski did not quantify the difference in the insurance. Nor did he quantify the amount of a monthly payment compared to the high expenses he currently incurs for repairs and maintenance, which would be eliminated with the purchase of a new vehicle. It appears likely that any potential new vehicle expenses would be offset by a reduction in Zaporski's other transportation expenses. One other expense might also impact distributions to unsecured creditors. Schedule J indicates a mortgage arrearage on Zaporski's first mortgage to Chase. Zaporski did not testify as to his mortgage arrearage. The only evidence before the Court is schedule J's indication that it would take Zaporski seven months to "catch up" on the arrearage. With the August 24, 2006 petition date, that seven months has come and gone. There is no evidence that a mortgage arrearage claim would delay or diminish a distribution to unsecured creditors.

While it appears that Congress intended to offer greater protections to contributions to 401(k) plans under § 541(b)(7) as added by BAPCPA,[2] the Court still must consider all of Zaporski's

_____

[2] The UST focused on § 541(b)(7) in arguing that Zaporski's contributions to his 401(k) plan would be considered disposable income in a chapter 13 case. That section provides that property of the estate does not include any amount withheld by an employer for contribution to a qualified employee benefit plan, and goes on to state "except that such amount under this subparagraph shall not constitute disposable income, as defined in section 1325(b)(2) . . . ." 11

circumstances for purposes of § 707(b)(3)(B). In this case, Zaporski has already built substantial equity in his 401(k) plan. As of September 30, 2006, the balance was $143,251.39. Moreover, Zaporski's schedules show that he has a "cash and carry pension" worth $102,500. Zaporski characterized this in his testimony as a "traditional pension plan" provided to him by DTE. Even if the Court concludes that voluntary contributions to his 401(k) plan are not disposable income in a chapter 13 case, it is nevertheless still relevant to the Court that Zaporski already has a very substantial retirement nest egg set aside, with no evidence of an imminent retirement such that Zaporski will need to draw on that nest egg in the foreseeable future. According to his schedules, he has assets of $404,536 and liabilities of $259,156. Clearly, on a balance sheet basis, he is solvent. Further, the liabilities on that balance sheet include the $59,000 claim arising out of a traffic accident that Zaporski himself testified is disputed and that he does not believe he owes. Without that $59,000 claim, Zaporski's total unsecured non-priority debts in this case are only $44,240 and Zaporski would have more than $200,000 of equity on his balance sheet. With *no* belt tightening, *no* changes to his present lifestyle at all, *and* with maintaining the 401(k) contributions *and* loan repayments at the current level,

---

U.S.C. § 541(b)(7)(A)(i). Because the word "except" implies something different from or contrary to what came before, the UST argues that Congress must have intended the meaning of the "shall not be property of the estate" phrase to be different from the "shall not constitute disposable income" phrase. The UST contends that the "difference" is that the first part refers to pre-petition contributions, and the "except" refers to post-petition contributions. The UST concludes that Congress made a drafting error, which would be corrected by deleting the word "not" in the second phrase so that the reference to disposable income should read "except that such amount under this subparagraph shall constitute disposable income, as defined in section 1325(b)(2)." A more plausible reading, and one that does less violence to the statutory language, is that Congress intended the disposable income phrase to provide clarification or emphasis. In that case, a better word than "except" may have been "and." Regardless, the Court is unwilling to adopt the UST's reading of the statute. See In re Njuguna, ___ B.R. ___, 2006 WL 3702674 (Bankr. D.N.H. Aug. 17, 2006) (finding that § 541(b)(7) removes 401(k) contributions from property of the estate and § 1322(f) removes loan repayments from disposable income in a chapter 13).

-24-

Zaporski still has an ability to repay a significant amount of his unsecured debts out of future earnings.

Following the mandate of § 707(b)(3)(B), the Court considers the following circumstances as relevant in this case: Zaporski did not file bankruptcy because of any unforseen or catastrophic events, but instead because of excessive spending on entertainment and personal lifestyle choices; he has a substantial, above median income at a stable job; a substantial equity on his balance sheet; a substantial pension plan for when he retires; a substantial 401(k) account; and an ability to continue making contributions to his 401(k) and repay all of his loans to it while at the same time having an ability to repay a meaningful dividend to his creditors, all without making any sacrifices in his present lifestyle. In these circumstances, the Court finds that Zaporski, although not a dishonest debtor in any sense, is simply not an individual in need of a chapter 7 discharge. The granting of relief here would be an abuse of chapter 7. The Court concludes that the UST's motion to dismiss should be granted under § 707(b)(3)(B). Because the Court concludes that Zaporski has the ability to fund a chapter 13 plan, the Court will delay entry of an order dismissing this case for 14 days to permit Zaporski the opportunity to convert this case to chapter 13. If a motion to convert to chapter 13 is not filed within 14 days, the Court will enter an order dismissing this case.

**For Publication**

```
Signed on April 17, 2007
```

                                        /s/ Phillip J. Shefferly
```
                                     Phillip J. Shefferly
                                     United States Bankruptcy Judge
```